

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 23, 2018

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Janis Klava*, 16 Cr. 692 (JMF)

Dear Judge Furman:

    The defendant in this case, Janis Klava, is scheduled to be sentenced on January 30, 2018 at 3:30 p.m., having pled guilty to conspiracy to commit bank fraud and wire fraud. The Government respectfully submits this letter in advance of the sentencing. Pursuant to a plea agreement between the parties, the United States Sentencing Guidelines ("Guidelines") range is 57 to 71 months' imprisonment. For the reasons set forth below, the Government submits that a sentence within the Guidelines range is warranted in this case.

    **A. Offense Conduct**

    This case involves a wire fraud and money laundering conspiracy by a network of individuals located in New York and oversees. The conspiracy has targeted victims principally through variations on an internet fraud: a member of the conspiracy posts an advertisement for a boat or car for sale on Craigslist. Often these advertisements use the names of real automobile dealerships to lend credibility to the postings. When prospective buyers respond to these advertisements, members of the conspiracy negotiate with them over email—again, often using email accounts set up in the names of real car dealerships—and provide bank wiring instructions to the buyers. After paying, though, the expectant buyers never receive any vehicles.

    Victims of this scheme typically do not realize that they have been defrauded for a matter of days. And during that period, members of the conspiracy withdraw the funds wired by victims into the bank accounts specified in the fraudulent emails to those victims. Those bank accounts have been set up by individuals recruited from Baltic countries, who travel to the United States, open bank accounts in the names of fictitious corporations, and then wait to withdraw victims' funds as soon as they are deposited into these accounts. Once the funds are withdrawn, they are laundered oversees.

    Janis Klava organized and managed those individuals—so-called money mules—who opened bank accounts and withdrew victims' funds. Klava oversaw approximately five to ten

money mules at a time. One of those money mules who was supervised by Klava was Emils Mors, who was charged in this case and sentenced on July 13, 2017. After Mors arrived in the United States in November 2015, Klava provided him with information for opening bank accounts in the names of fictitious businesses. (U.S. Probation Office's Final Presentence Report, dated January 10, 2018 ("PSR"), ¶ 15.) Klava did the same for other money mules who came to the United States. (PSR ¶ 20.) Klava provided the money mules with cellphones, vehicles, hotel rooms, and money for food. (*Id.*) He also monitored the money mules' accounts for activity; told the money mules to check their accounts; and drove Mors and other money mules to bank locations in Manhattan and Brooklyn, where they withdrew money from accounts and gave the funds to Klava. (PSR ¶¶ 16, 20-24.) At Klava's direction, the money mules withdrew the funds in amounts less than $10,000 to avoid scrutiny from the banks and account closures. (*Id.*) Klava also communicated with a co-conspirator based in England, who told Klava when to expect wire payments into the money mules' accounts. (*Id.*)

### B. Procedural History

On March 16, 2017, Klava was arrested in Miami. (PSR ¶ 26.) On October 19, 2017, pursuant to a plea agreement, Klava pleaded guilty to conspiracy to commit bank and wire fraud, as charged in the Indictment. (PSR ¶ 7.) Consistent with the plea agreement, the U.S. Probation Department has calculated the applicable Sentencing Guidelines range as 57 to 71 months' imprisonment. (PSR ¶¶ 7, 35-52, 76.) The Probation Department recommends a sentence of 57 months' imprisonment. In a sentencing submission dated January 17, 2018, the defendant, through counsel, requests that the Court impose a sentence below 57 months' imprisonment.

### C. Discussion

A significant sentence of incarceration is necessary in this case to reflect the seriousness of the defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to this defendant and other similarly situated individuals, and to protect the public. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). All of these considerations weigh heavily in favor of a substantial sentence—one within the Guidelines range of 57 to 71 months' imprisonment.

*First*, a significant prison sentence is necessary to reflect the seriousness of the defendant's conduct, to promote respect for the law, and to provide just punishment. The conspiracy outlined herein resulted in millions of dollars in losses to consumers, with over $430,000 dollars of those losses directly attributable to the group of conspirators that the defendant directly supervised, and an additional $350,000 in losses from another group of conspirators supervised by a close associate of the defendant's whom the defendant coordinated with regularly. While the defendant was not involved in posting fraudulent advertisements on the Internet or defrauding victims, his supervision of the money mules was necessary to launder the funds and he was aware that they were procured by fraud. Without the defendant—and those in his group who he supervised—there would have been no way to withdraw the money victims sent into bank accounts controlled by the conspiracy. Many of these victims devoted considerable savings to the purchases of automobiles and boats—savings that were taken by the defendant and sent overseas.

*Second*, a significant sentence of imprisonment is necessary to afford adequate deterrence to the defendant and to others similarly situated.  Klava, and others like him, came to the United States to participate in this conspiracy.  Believing there is little downside to becoming involved in this scheme, many young individuals from Baltic states have come to the United States to serve as "money mules" or supervisors, always intending to return to their native country.  A significant sentence in this case is necessary to send a message to these would-be "money mules" that there are serious consequences associated with coming to this country to participate in this type of fraud and money laundering activity.

*Third*, with respect to relative culpability, this defendant is properly viewed as being at the higher end of the conspirators within the United States, but at the mid-level relative to the directors of the conspiracy in Europe.  His role in the conspiracy was somewhat higher than Emils Mors, who received a within-Guidelines sentence of 57 months' imprisonment.  Klava was Mors' supervisor when Mors first arrived in the United States, and instructed Mors on making withdrawals. Mors eventually graduated from "money mule" status to being a deputy of Klava's who assisted Klava in supervising others.  Thus, the defendant served as a supervisor for a longer period of time than Mors, and he also coordinated his group's activities with those of another supervisor's group, so he is responsible for a greater loss amount than Mors.  However, unlike Mors, Klava did not jump bail and return to the conspiracy (he was detained upon arrest), so he did not receive an obstruction enhancement and his guidelines level works out to be the same as Mors.  Thus, on balance, the Government submits that a sentence within the Guidelines of 57 to 71 months' imprisonment is appropriate.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

by: _____
Thane Rehn
Nicolas Roos
Assistant United States Attorney
(212) 637-2354 / -2421